**IT IS ORDERED as set forth below:**

**Date: October 30, 2017**

*Paul Baisier*

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER |
| **BRYAN MOSELY**, | **17-58621-PMB** |
| Debtor. | CHAPTER 13 |
| **BRYAN MOSELY**, | |
| Movant, | |
| v. | CONTESTED MATTER |
| **SUSAN MOSELY**, | |
| Respondent. | |

### ORDER ON OBJECTION TO PROOF OF CLAIM

This matter is before the Court on the *Objection to Proof of Claim Number 1 Filed by Susan Mosely* (Docket No. 38) (the "Objection") filed by the debtor in the above-captioned case (the "Debtor") on July 17, 2017. The Court held a hearing on the Objection on August 17, 2017,

commencing at 2:00 p.m. (the "Hearing"). At the Hearing, counsel for the Debtor appeared in support of the Objection, and counsel for the Susan Mosely appeared in opposition to the Objection. The Debtor and Susan Mosely testified at the Hearing.

At the conclusion of the Hearing, the Court permitted the parties to submit certain additional information and argument by post-Hearing brief. Pursuant to that direction, counsel for Susan Mosely filed a letter brief on August 23 and 25, 2017 (Docket Nos. 56 and 57), the Debtor filed a letter brief on August 30, 2017 (Docket No. 58)(the "Debtor's Brief"), and Susan Mosely filed a letter reply on September 6, 2017 (Docket No. 59).

**FACTS AND CONCLUSIONS**[1]

Background

The Debtor and Susan Mosely used to be married. During the time they were married they had a child, Emerson Mosely. In 2013, they got a divorce. That divorce was concluded with a *Final Judgment and Decree*, entered by the Superior Court of Gwinnett County, Georgia (the "Superior Court") on August 28, 2013 (the "Divorce Decree"). Pursuant to the Divorce Decree, Susan Mosely was given principal physical custody of Emerson (Divorce Decree, § 1) and the Debtor was obligated to pay Susan Mosely $790 a month in child support (Divorce Decree, § 3). Under the Divorce Decree, the Debtor was also obligated to pay Susan Mosely $1,765.76 for medical expenses, $488.76 for medical insurance, $1,118 for cell phone bills, $1,353.50 for an insurance bill (the foregoing items, the "Other Decree Items") and $6,500 for attorneys' fees (with the Other Decree Items, the "Decree Obligations")(Divorce Decree, §§ 13, 14). The Decree Obligations were to be paid by the Debtor to Susan Mosely at a rate of $200 per

---

[1] This Order constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

month.  Id.  It appears that the Decree Obligations generally arose from the failure by the Debtor to comply with interim orders of the Superior Court made during the divorce proceedings.  The issue of additional attorneys' fees was reserved for a future order (Divorce Decree, § 8).  That future order (the "Attorneys Fee Order") was entered by the Superior Court on October 4, 2013, and required the Debtor to pay $16,500 of Susan Mosely's attorneys' fees in equal installments over twelve (12) months.  The Attorneys Fee Order does not outline the basis for the award, or indicate under what portion of the Official Code of Georgia the award is made.  Attorneys Fee Order, *passim*.

The obligations arising from his divorce appear to have led quickly to the Debtor's first bankruptcy filing.[2]  On February 5, 2014, the Debtor filed Case No. 14-52520 (the "First Bankruptcy Case") with this Court.  Susan Mosely filed a proof of claim in the First Bankruptcy Case on May 30, 2014 (Claim No. 9)(the "First Case Claim"), asserting a priority claim in the amount of $16,500.  The First Case Claim appears to be based solely on the Attorneys Fee Order; no other claims under the Divorce Decree were included in the First Case Claim.  The Debtor objected to the First Case Claim (First Bankruptcy Case, Docket No. 22), noting that the Attorneys Fee Order does not outline the basis for the award and arguing that the award is thus not a "domestic support obligation" under 11 U.S.C. § 101(14A) and thus is not entitled to priority under 11 U.S.C. § 507(a)(1)(A).  The Debtor and Susan Mosely settled the objection to the First Case Claim.  That settlement was embodied in an *Order on Debtor's Objection to Proof of Claim*, which was entered by this Court on October 3, 2014 (First Bankruptcy Case, Docket No. 38)(the "First Case Order").  Pursuant to First Case Order, Susan Mosely was allowed a

---

[2] The Debtor's obligations related to his divorce included his obligation to pay $790 a month in child support, $200 a month for the Decree Obligations, and $1,375 a month under the Attorneys Fee Order, or a total of $2,365 per month.  The Debtor's gross monthly income was $2,436 at the time these obligations were determined (See Divorce Decree, § 3A).

3

priority claim of $8,250 and a general unsecured claim of $8,250. The First Case Order was not appealed and became final. First Bankruptcy Case Docket, *passim*.

The Debtor confirmed a plan of reorganization in the First Bankruptcy Case. First Bankruptcy Case, Docket Nos. 27, 51. Pursuant to the confirmed plan, the Debtor was to pay the priority portion of Susan Mosely's claim, together with certain other obligations. Id. On May 20, 2016, the First Bankruptcy Case was dismissed due to the failure of the Debtor to make plan payments.[3] First Bankruptcy Case, Docket Nos. 61, 62. During the course of the First Bankruptcy Case, the Chapter 13 trustee paid $2,398 on the priority claim of Susan Mosely, and nothing on her unsecured claim. First Bankruptcy Case, Docket No. 64.[4]

During the First Bankruptcy Case, the Debtor apparently commenced an action in the Superior Court to modify the parenting rights set forth in the Divorce Decree. That action did not go well for the Debtor. After the dismissal of the First Bankruptcy Case, Susan Mosely recommenced her efforts to collect the amounts owed to her by the Debtor as a result of the original Divorce Decree and commenced efforts to collect additional amounts arising in connection with the Debtor's modification action. A hearing before the Superior Court on various efforts of Susan Moseley to hold the Debtor in contempt and get him to pay his obligations to her was scheduled for September 27, 2016. The day before, on September 26, 2016, the Debtor filed his second bankruptcy case with this Court, Case No. 16-66962 (the "Second Bankruptcy Case"). Notwithstanding the filing of the Second Bankruptcy Case,[5] the

---

[3] The dismissal of the First Bankruptcy Case had no effect on the First Case Order. See 11 U.S.C. § 349.

[4] This is the figure asserted by Susan Mosely. The final report filed by the Chapter 13 trustee actually asserts that Susan Mosely was paid $2,403.68. Given the immaterial difference and Susan Mosely's records presented to the Court at the Hearing, the Court adopts the figure asserted by Susan Mosely.

[5] Because the First Bankruptcy Case was dismissed, the Debtor was required to have the automatic stay of 11 U.S.C. § 362(a) extended if he wanted its full benefits to extend past the thirtieth (30th) day after the filing of the Second Bankruptcy Case. 11 U.S.C. § 362(c)(3). The Debtor took the necessary actions, and the stay was continued *in toto*.

4

parties proceeded with the September 27 hearing, and subsequently had two (2) additional orders entered, one entitled *Consent Final Judgment* on October 18, 2016 (the "$13,000 Fee Order") and the second entitled *Consent Final Judgment on Contempt* on December 7, 2016 (the "Contempt Order"; collectively, with the $13,000 Fee Order, the "Postpetition State Court Orders").[6] Eventually the Debtor sought relief from this Court with regard to these activities, and this Court entered two (2) orders of its own, the first addressing the effect of the automatic stay with regard to Susan Mosely's postpetition collection activities (Second Bankruptcy Case, Docket No. 27)(the "Stay Order") and the second requiring the disgorgement of certain attorneys' fees paid by the Debtor during that time pursuant to the Postpetition State Court Orders (Second Bankruptcy Case, Docket No. 39 (the "Disgorgement Order").[7] No party appealed the Stay Order or the Disgorgement Order, both of which are now final. Among other things, the Disgorgement Order conditionally required counsel for Susan Mosely to return certain payments that he received from the Debtor after the filing of the Second Bankruptcy Case pursuant to the Postpetition State Court Orders (the "Postpetition Payments"). After the Debtor

---

Second Bankruptcy Case, Docket No. 16, entered October 28, 2016. Consequently the automatic stay was in effect at all relevant times during the Second Bankruptcy Case.

[6] The parties disagree about whether the Debtor ever mentioned the Second Bankruptcy Case during this time period. The transcript of the September 27 hearing (the "September 27 Transcript"), which includes some sworn testimony by the Debtor, makes no express reference to the Second Bankruptcy Case. However, in the September 27 Transcript, Susan Mosely's counsel, who the Debtor claims knew of the Second Bankruptcy Case, did indicate at that hearing that the Debtor "agreed not to include any of these obligations on [sic] any bankruptcy action which he has currently pending or which he may contemplate filing." This same phrasing was also included in Paragraph 6 of the $13,000 Fee Order. It is not material for the purposes of this Order, however, whether anyone on behalf of Susan Mosely knew of the Second Bankruptcy Case during this period, as knowledge of the stay is not required for the stay to have effect. See, e.g. Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3rd Cir. 1995).

[7] Both Postpetition State Court Orders require payment by the Debtor of the attorneys' fees of Susan Mosely. $13,000 Fee Order, π 4; Contempt Order, π 9. The Debtor asserted in the hearings that led to the Disgorgement Order that he paid $3,150 pursuant to these orders; Susan Mosely's counsel acknowledged receipt of $2,400. That dispute was not resolved in the Disgorgement Order, which instead simply required the conditional disgorgement in full of whatever amount had actually been paid. Based on the dollar figures involved, however, it appears to this Court that what was paid was the first two (2) installments of an additional $3,600 in attorneys' fees awarded to Susan Mosely under the Contempt Order, with the additional $750 in dispute likely being the $750 awarded separately under the $13,000 Fee Order. This resolution is important for the purposes of this Order only because it means that none of these payments reduced the $13,000 obligation under the $13,000 Fee Order.

failed to make timely certain postpetition child support payments during the Second Bankruptcy Case and was put on "strict compliance" with regard to such payments (Second Bankruptcy Case, Docket No. 43), the Second Bankruptcy Case was dismissed at the request of Susan Mosely when the Debtor failed to make timely the child support payment due on or before March 1, 2017 (Second Bankruptcy Case, Docket Nos. 57, 58).[8]  Because the Second Bankruptcy Case was dismissed, Susan Mosely's counsel was not required by the Disgorgement Order to return the Postpetition Payments.

After the dismissal of the Second Bankruptcy Case, Susan Mosely recommenced her collection efforts, seeking, among other things, the incarceration of the Debtor.  In response, the Debtor filed this case on May 12, 2017 (the "Filing Date").  Because the Debtor is an individual and had two (2) cases dismissed within the prior twelve (12) months, no stay came into effect on the filing of this case.  11 U.S.C. § 362(c)(4).  However, the Debtor requested the Court impose a stay, and Court did so over the objection of Susan Mosely. (See Docket Nos. 6, 18, 23).

In this case, the Debtor's most recently filed reorganization plans propose to pay Susan Mosely a priority claim of $5,445. See Docket Nos. 21, 49, 51, 63.[9]  That amount equals the priority claim asserted by Susan Mosely in the Second Bankruptcy Case.[10]  In this case, Susan Mosely initially filed a proof of claim for $32,547, with $18,445 asserted as a priority claim and the balance as a nonpriority unsecured claim. See Claim No. 1. The $18,445 priority portion of

---

[8] The dismissal of the Second Bankruptcy Case had no effect on the Stay Order or the Disgorgement Order.  See 11 U.S.C. § 349.

[9] The plans also provide for partial payment of unsecured claims.  The Debtor's most current plan, filed October 12, 2017 (Docket No. 63), proposes to pay the greater of $13,717.08 or 38.72% on unsecured claims.  The deadline for filing claims has passed, and the total of unsecured claims (other than any held by Susan Mosely) is less than $4,000.

[10] Susan Mosely filed a proof of claim in the Second Bankruptcy Case, Claim No. 3.  In that proof of claim, Susan Mosely asserted a total claim of $32,547, $5,445 of which she asserted was entitled to priority under 11 U.S.C. § 507(a)(1)(A).  The $5,445 figure is consistent with what appears to be the undisputed amount that remains unpaid under the Divorce Decree.

6

that proof of claim consisted of the $5,445 Decree Obligations and the $13,000 in attorneys' fees under the $13,000 Fee Order.  When Susan Mosely subsequently amended that claim to make the entire claim a priority claim, the Debtor filed the Objection.

The Amended Proof of Claim

Susan Mosely's asserted $32,547 priority claim in this case has three (3) distinct parts - $13,000 is the attorneys' fees allegedly owed under the $13,000 Fee Order (the "Fee Award"); $5,445 is the unpaid portion of the Decree Obligations; and $14,102 is the unpaid portion of the Attorneys Fee Order obligation.  These will be addressed in turn.

*$13,000 Attorneys' Fees*

The Fee Award appears to be for Susan Mosley's attorneys' fees related to the Debtor's generally unsuccessful efforts to obtain modifications to the Divorce Decree.  The Court must determine whether this Fee Award is a "domestic support obligation" (a "DSO"), and thus a priority claim under 11 U.S.C. § 507(a)(1).

A DSO is defined as:

"(14A) [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is-

    (A) owed to or recoverable by-

        (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

        (ii) a governmental unit;

    (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

7

>     (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
>
>       (i) a separation agreement, divorce decree, or property settlement agreement;
>
>       (ii) an order of a court of record;
>
>       (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
>     (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt."

11 U.S.C. § 101(14A).

In this case, it appears that the Fee Award (i) is owed to the former spouse of the Debtor; (ii) was established by an order from the Superior Court;[11] and (iii) has not been assigned to a non-governmental entity. Thus, the only open question in determining whether the Fee Award is a DSO is whether the Fee Award is "in the nature of alimony, maintenance, or support" of Susan Mosely.

The standard for whether attorneys' fees are "in the nature of alimony, maintenance, or support" has been addressed by the United States Court of Appeals for the Eleventh Circuit. See Strickland v. Strickland (In re Strickland), 90 F.3d 444 (11th Cir. 1996).[12] As noted in Strickland, federal law, not state law, controls this question. Strickland, 90 F.3d at 446.

---

[11] Because the $13,000 Fee Order was entered after the Petition Date and in violation of the automatic stay of 11 U.S.C. § 362(a), it may be that this element is not established either. However, because the Court ultimately finds that the obligation is not a DSO, it need not address this issue.

[12] Although Strickland was decided under a prior version of 11 U.S.C. § 523(a)(5), the analysis of what is "in the nature of alimony, maintenance or support" for the purposes of the definition of a "domestic support obligation" under 11 U.S.C. § 101(14A) should be the same as the analysis that the 11th Circuit applied to those same words in Strickland and its other cases under the prior version of 11 U.S.C. § 523(a)(5). Although the prior version of 11 U.S.C. § 523(a)(5) contained the word "actually" before the applicable phrase, and 11 U.S.C. § 101(14A)(B) does not, 11 U.S.C. § 101(14A)(B) finishes with the additional phrase "without regard to whether such debt is expressly so designated", which has the same effect on the applicable phrase as "actually" had on it in the prior version of 11 U.S.C. § 523(a)(5).

Therefore, even if, under state law, an award is couched as one that is in the nature of alimony, maintenance or support, that determination is subject to examination in a bankruptcy case under federal law. The Eleventh Circuit in Strickland held that whether an award of attorneys' fees constitutes support is a "simple inquiry" that "requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is 'actually in the nature of alimony, maintenance, or support.'" Id. (quoting Harrell v. Sharp (In re Harrell), 754 F.2d 902, 906 (11th Cir. 1985)). The DSO definition also explicitly provides that the label given to such an award in a court order is not determinative. 11 U.S.C. § 101(14A)(B) ("without regard to whether such debt is expressly so designated").

In Strickland, the Court held that attorneys' fees incurred in connection with a modification of a child custody arrangement were in the nature of support and thus nondischargeable. In that respect, this case is similar to Strickland. However, in Strickland, the Court determined that the fees were in the nature of support because they were awarded under Florida law, which required the consideration of the respective financial condition of the parties,[13] and thus were in the nature of support. Strickland, at 446-447. Because the Court found that the state court had made the award based on those considerations, its simple inquiry was at an end, and it denied the request of the debtor to require to bankruptcy court to reevaluate the propriety of the state court's determination. Id.

The foregoing circumstances are different than those presented to this Court. Here the Superior Court did not describe the statutory basis upon which the attorneys' fees were awarded. Although Georgia, like Florida, has statutory authority that permits the awarding of attorneys' fees in divorce and child custody cases and that requires the state court to make an award based

---

[13] The Eleventh Circuit did not explain in Strickland how it determined that the state court had awarded the fees under the Florida law it cited, rather than as a sanction for frivolous litigation or on some other basis. However, such a basis must have been included in the record presented to the Eleventh Circuit.

9

on the financial circumstance of the parties, see O.C.G.A. § 19-6-2, Georgia law also permits a court to award attorneys' fees as a sanction for frivolous litigation, see, e.g. O.C.G.A. §§ 9-15-14, 9-11-11. Particularly in light of the relatively minor changes to custody matters set forth in the $13,000 Fee Order, it is not clear on which basis the Superior Court made the award.

With regard to this issue, the Court has been presented with the $13,000 Fee Order and September 27 Transcript. The $13,000 Fee Order is a "consent" order that is signed by the parties and by the Superior Court.[14] The $13,000 Fee Order does not cite the legal basis for the award of $13,000 in attorneys' fees, nor does it state that the award of attorneys' fees is based on the financial condition of the parties. $13,000 Fee Order, *passim*. The September 27 Transcript does not indicate that any financial information was provided to the Court in connection with the relevant hearing from which the Superior Court could have made any determination of the financial condition of the parties. Consequently, it is not clear how the Superior Court could have complied with its statutory obligation to evaluate that condition in making an award under O.C.G.A. § 19-6-2.

The $13,000 Fee Order does contain some self-serving language clearly directed at this issue. More specifically, it says that "all payments of attorneys' fees and other arrearages herein are deemed to be in the nature of support owed from Plaintiff to Defendant, all as stipulated to, consented to, and agreed to by the parties herein, to be non-dischargeable in bankruptcy." $13,000 Fee Order, π 6. It is, of course, insufficient for these purposes that these amounts were "deemed" to be support, or that the parties agreed that it was support or that it was non-dischargeable. The attorneys' fees must actually constitute support. In the absence of an express

---

[14] The Debtor's consent to the form of the $13,000 Fee Order seems less than fully voluntary, since he apparently refused to sign it and only signed it under the threat of contempt. See Contempt Order, π 1. His consent to its terms, however, including his agreement to pay $13,000 in attorneys' fees, is evidenced by his sworn testimony as recorded on the September 27 Transcript.

10

determination by the Superior Court that the attorneys' fees were awarded as support based upon the relative financial circumstances of the parties,[15] this Court cannot find that they constitute support based on the record in this case.[16] Because it has not been established that the Fee Award is in the nature of support, the Fee Award does not constitute a DSO and thus is not a priority claim in this case.

*Decree Obligations*

As to the Decree Obligations, the parties agree that $5,445 remains unpaid. There is no indication in the Divorce Decree or otherwise in the record that the attorneys' fees portion of that award was intended as alimony, support or maintenance, and thus this Court does not believe that it constitutes a DSO.[17] All of the Other Decree Items appear to be intended for those purposes, and would each constitute a DSO. Consequently, it is important to determine how to allocate the payments that were made on this claim[18] between the attorneys' fees and the Other Decree Items. The Divorce Decree provides that the payments are to be applied first to the attorneys' fees, and then to the Other Decree Items. The Court does not find any reason to disregard that allocation method. If the payments are so applied, all of the payments go towards the attorneys' fees, and what remains of the claim is almost entirely a DSO. More specifically, the $5,445 claim is made up of $4,716.02 for Other Decree Items (which are DSO's and thus

---

[15] If a state court enters an order in a divorce or custody matter stating expressly that it is awarding attorneys' fees under O.C.G.A. § 19-6-2 after consideration of the financial condition of the parties, the simple inquiry of this Court is at an end. It is only in cases where it is not clear on what basis an award was made that further inquiry might be appropriate. In this case, however, the record is closed, such that no further inquiry is possible.

[16] For example, the record in this case contains no information on the financial circumstances of Susan Mosely as of the date of the award.

[17] See supra, pp. 7-11.

[18] Because the parties agree that $5,445 remains of this obligation, and that the obligation consists of the amounts set forth in Paragraphs 13 and 14 of the Divorce Decree (which total $11,216.02), the Court determines that $5,771.02 in payments must have been made on this obligation. Because that amount is less than the $6,500 in attorneys' fees, all of the payments are applied to the attorneys' fees.

11

priority claims), and only $728.98 in remaining attorneys' fees (which are not DSO's and thus are nonpriority unsecured claims).

*$14,102 Attorneys' Fees Order*

As to the $14,102 balance owed under the Attorneys Fee Order, the characterization of that claim should be determined by the First Case Order and the related agreement of the parties. The $16,500 claim was divided by the First Case Order into an $8,250 priority claim and an $8,250 unsecured nonpriority claim.[19]

In reliance on the First Case Order and related agreement, the Debtor made payments to the Chapter 13 trustee in the First Bankruptcy Case, and those payments were forwarded in part to Susan Mosely to be applied to the agreed upon priority claim. The payments made on this claim during the First Bankruptcy Case were made solely on the priority portion of the claim, leaving unpaid all $8,250 of the nonpriority unsecured claim and $5,852 of the priority claim.[20]

Accordingly, in light of the foregoing, it is

**ORDERED** that the Objection is **SUSTAINED IN PART AND DENIED IN PART** as follows:

1. The $13,000 portion of the claim asserted by Susan Mosely in the Proof of Claim that constitutes attorneys' fees and arises from a consent award made by the state court under the $13,000 Fee Order during the pendency of the Second Bankruptcy Case is allowed as an unsecured nonpriority claim;

---

[19] The Debtor acknowledged the existence of this agreed priority obligation in the Debtor's Brief (Debtor's Brief, p. 2), but did not explain why that obligation should not be treated as agreed in this case.

[20] Other than the First Case Order and the related agreement, the Court was not presented with any evidence at the Hearing to support priority treatment for this claim. Neither the Divorce Decree nor the order awarding these fees contains any findings regarding the basis for or nature of the award. Consequently, but for First Case Order and the related agreement, no part of this claim would have been entitled to priority under 11 U.S.C. § 507(a)(1). See, supra, pp. 7-11.

12

2.     The $5,445 portion of the claim asserted by Susan Mosely in the Proof of Claim regarding the Decree Obligations is allowed as a $4,716.02 priority claim and a $728.98 unsecured nonpriority claim; and

3.     The $14,102 portion of the claim asserted by Susan Mosely in the Proof of Claim that arises from the Attorneys Fee Order is allowed as a $5,852 priority claim and an $8,250 unsecured nonpriority claim.

The Clerk is directed to serve this Order upon the Debtor, Debtor's Counsel, Respondent, counsel for the Respondent, the Chapter 13 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**